UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DONNA PELFREY,                     :        Case No. 1:08-cv-605
                                   :
        Plaintiff,                 :        Judge Michael R. Barrett
                                   :        Magistrate Judge Timothy S. Black
vs.                                :
                                   :
COMMISSIONER OF                    :
SOCIAL SECURITY,                   :
                                   :
        Defendant.                 :


**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-
DISABILITY FINDING BE FOUND SUPPORTED BY SUBSTANTIAL
EVIDENCE, AND AFFIRMED; AND (2) THIS CASE BE CLOSED**

        This is a Social Security disability benefits appeal.  At issue is whether the

administrative law judge ("ALJ") erred in finding Plaintiff "not disabled" and therefore

unentitled to supplemental security income ("SSI") and disability insurance benefits

("DIB").  (*See* Administrative Transcript ("Tr.") (Tr. 33-47) (ALJ's decision)).

**I.**

        On August 23, 2004, Plaintiff filed an application for SSI and DIB alleging that

she became disabled on July 10, 2003, due to chronic back pain, numbness in her right

leg, a deformed right hand, an "irregular" right kidney, headaches, and depressive

symptoms.  (Tr. 35-36, 101).

_____

        [1]  Attached hereto is a NOTICE to the parties regarding objections to this Report and
Recommendation.

Upon denial of Plaintiff's claims on the state agency level, she requested a hearing *de novo* before an ALJ. (Tr. 70-71). A hearing was held on April 18, 2007, at which Plaintiff appeared with counsel and testified. (Tr. 384-443). A vocational expert, Vanessa Harris, was also present and testified. (*Id.*)

On October 26, 2007, the ALJ entered his decision finding Plaintiff not disabled because she could perform a significant number of jobs in the national economy. (Tr. 30-47). That decision became the final determination upon denial of review by the Appeals Council. (Tr. 6-8).

At the time of the hearing, Plaintiff was 41 years old with a high school education, during which schooling she was enrolled in special education classes. (Tr. 35). She has past relevant work experience as a sales clerk and in the food service industry. (*Id.*)

The ALJ's "Findings," which represent the rationale of his decision, were as follows:

1.      The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.

2.      The claimant has not engaged in substantial gainful activity since July 10, 2003, the alleged disability onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3.      The claimant has the following severe impairments: chronic back pain due to degenerative disc disease, a deformity of the right hand, borderline intellectual functioning and depression with associated anxiety (20 CFR 404.1520(c) and 416.920(c)).

4,      The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part

404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.      After careful consideration of the entire record, the undersigend finds that the claimant has the residual functional capacity to perform light work. However, she is restricted to only occasional bending, squatting, stooping, kneeling, crouching, and crawling and cannot climb ladders, ropes, or scaffolds or otherwise work around hazards. She is also restricted to using her non-dominant right hand for gross assistance only. Due to her borderline intellectual deficits and depression/anxiety, the claimant is further restricted to performing low stress jobs which do not involve production quotas, reading skills above a second grade level, complex or detailed instructions, more than limited contact with co-workers and supervisors or any direct dealing with the general public.

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.      The claimant was born on July 20, 1965, and is 42 years old, which defines her as a "younger individual" at all times relevant to this case (20 CFR 404.1563 and 416.963).

8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not she has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.      Considering her age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11.      The claimant has not been under disability, as defined in the Social Security Act, from July 10, 2003, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 37-47).

In summary, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Regulations and was therefore not entitled to SSI or DIB. (Tr. 47).

On appeal, Plaintiff argues that: (1) the ALJ erred in determining her RFC; (2) the ALJ erred in finding that she was not credible; (3) the ALJ erred in not addressing her IQ in his determination of her ability to perform sedentary work; (4) the ALJ erred when he failed to convey limitations to the vocational expert that were properly identified in the RFC assessment and because he relied on a vocational expert who was unable to give opinions about how Plaintiff's psychological issues would affect the job base and her ability to work 40 hours a week on a sustained basis; (5) the ALJ erred in failing to make proper credibility findings as to Plaintiff's mother's testimony; and (6) the ALJ erred in failing to have a medical expert present at the hearing and did not evaluate the case as a whole in violation of 42 USCA § 1382c(I) and c(G). (Doc. 9 at 9-18). Each argument will be addressed in turn.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that

finding must be affirmed, even if substantial evidence also exists in the record upon

which the ALJ could have found plaintiff disabled.  As the Sixth Circuit has explained:

> "The Commissioner's findings are not subject to reversal
> merely because substantial evidence exists in the record to
> support a different conclusion.  The substantial evidence
> standard presupposes that there is a "zone of choice" within
> which the Commissioner may proceed without interference
> from the courts.  If the Commissioner's decision is supported
> by substantial evidence, a reviewing court must affirm."

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The claimant bears the ultimate burden to prove by sufficient evidence that she is

entitled to disability benefits.  20 C.F.R. § 404.1512(a).  That is, she must present

sufficient evidence to show that, during the relevant time period, she suffered an

impairment, or combination of impairments, expected to last at least twelve months, that

left her unable to perform any job in the national economy.  42 U.S.C. § 423(d)(1)(A).

## A.

For her first assignment of error, Plaintiff maintains that the ALJ erred in

determining her RFC.

The record evidence shows:

*Medical Evidence - Physical*

From May 25, 1999 to January 23, 2007, Dr. Kirk Smith, a general practitioner,

treated the majority of Plaintiff's conditions on an as-needed basis.  (Tr. 259-297, 322-

332).  Plaintiff complained of back and right flank pains, and Dr. Smith prescribed pain

medication.  (Tr. 265-266, 271, 281).

In 1999, Plaintiff was referred to an ob/gyn specialist for complaints of abdomen pain.  (Tr. 264, 273-274, 282, 286-287).  CTs of her pelvis and abdomen showed mild abnormalities.  (*Id*.)  Plaintiff had a partial hysterectomy in 2002.  (Tr. 264).

Plaintiff saw Dr. Dennis Mann at Middletown Regional Hospital on July 3, 2004, complaining of right flank pain.  (Tr. 194).  Plaintiff reported some mild tenderness in her abdomen and on the right side of her lower back.  (Tr. 195).  Plaintiff's diagnostic testing was negative.  (*Id*.)  Dr. Mann made no diagnosis and told Plaintiff to return if her symptoms worsened.  (Tr. 195-197).

On July 28, 2004, Plaintiff's CT of the abdomen and pelvis showed that the right kidney was chronically atrophied.  (Tr. 251).  There was no acute inflammatory process or obstruction.  (*Id*.)

In September 2004, Plaintiff's lumbar spine MRI showed no nerve root compressions or disc herniations, and showed only mild degenerative changes within the facet joints at the lower lumbar spine.  (Tr. 284).  Plaintiff's thoracic spine MRI showed right paracentral posterior disc herniations at the T7-T8 and T8-T9 levels, causing some flattening of the right anterior aspect of the cord.  (Tr. 283).

Dr. Damian Danopulos performed a physical consultative examination on December 14, 2004.  (Tr. 206-215).  He noted Plaintiff's childhood history of a fall at six months old which led to a blood clot in her brain, an inability to move her right arm,

deformities in her right hand causing her to suffer spasms and to lose use of the hand, and constant headaches. (*Id.*) Plaintiff had a normal gait without ambulatory aids. (Tr. 209). Upon examination, Plaintiff had full strength and range of motion in her lower extremities. (Tr. 209). Sensory examination was normal for light touch, pain, and proprioception-vibration. (*Id.*) Deep tendon reflexes were highly exaggerated on the right side. (Tr. 210). Plaintiff's bilateral straight leg raise and squats were normal and lower spine motions were slightly restricted. (Tr. 209).

Plaintiff's Babinski test (*i.e.*, a test to identify damage or disease of the spinal cord and brain) was spontaneously positive with the sign of eventail in all toes. (Tr. 210). Dr. Danopulos found no nerve root compressions or peripheral neuropathy and opined that Plaintiff's constant headaches were triggered by her previous brain injury. (Tr. 209, 211). He found that she developed permanent brain damage in the left cilian fissure region which controls the motor function of the right arm and the right leg which rendered her right hand totally useless. (*Id.*)

On January 11, 2005, Dr. Lynne Torello, a state agency physician, reviewed Plaintiff's records and opined that, despite her limitations, Plaintiff had the ability to perform work consistent with the light exertional level. (Tr. 238-245). Dr. Torello opined that, due to Plaintiff's right hand deformity, Plaintiff would not be able to push or pull with her right hand, or climb. (Tr. 239). Dr. Maria Congbalay, another state agency physician, reviewed the medical records and agreed with Dr. Torello's assessment. (Tr. 245).

Plaintiff was taken to the emergency room on March 14, 2005 for a right knee strain. (Tr. 305- 307). X-rays indicated that Plaintiff was suffering from a suprapatellar bursal effusion. (Tr. 307). She was given pain medications and told to follow up with her primary doctor. (Tr. 306). On April 5, 2005, Plaintiff saw an orthopaedist, who opined that Plaintiff's right knee contusion was a self limiting condition and that she would continue to improve. (Tr. 308).

In August 2006, Dr. Smith ordered a CT of the pelvis and abdomen which showed a small right kidney. (Tr. 323). The other abnormal findings were considered stable or unchanged from previous scans. (*Id*.)

Plaintiff was admitted at the Middletown Regional Hospital on November 29, 2006 for chest pain. (Tr. 333-350). Plaintiff's stress test and echocardiogram were normal. (Tr. 344, 346). Plaintiff returned March 2, 2007, complaining of back pain. (Tr. 351-352). Plaintiff was told to apply heat, take pain medication, and to follow up with her doctor. (Tr. 352).

*Post Hearing - Physical Medical Evidence*

On May 24, 2007, Dr. Aivars Vitols performed a consultative physical examination. (Tr. 358-373). Upon examination, Plaintiff had full range of motion in her cervical spine and Dr. Vitols found no palpable myospasms. (Tr. 361). Plaintiff was able to walk heel to toe satisfactorily. (Tr. 362). Plaintiff's right biceps, triceps, and forearm reflexes were intact. (*Id*.) Dr. Vitols diagnosed Plaintiff with a claw right hand and

degenerative disc disease of the lumbar spine. (*Id*.) He opined that, despite her physical condition, Plaintiff could still perform work. (Tr. 358-373). Dr. Vitols found that, despite not using her right hand, she could still lift and carry up to 50 pounds occasionally. (Tr. 368). With her left hand, Plaintiff could continuously reach, handle, and push or pull. (Tr. 370). Additionally, she could sit for four hours total and also stand and walk for two hours each in an eight-hour workday. (Tr. 369). Dr. Vitols opined that Plaintiff could not climb, crawl, use moving mechanical parts, or operate a motor vehicle. (Tr. 371).

*Medical Evidence - Psychological*

On November 19, 2003, Dr. David Chiappone performed a consultative psychological examination. (Tr. 172-175). Plaintiff reported that she took care of her personal needs and her home, had been married twice, and was involved with someone. (Tr. 172-173). Plaintiff denied obsessions, compulsions, or panic attacks, but reported difficulty falling asleep, reduced energy, decreased interest in activities, daily crying spells, and feelings of hopelessness, helplessness, and worthlessness frequently. (Tr. 173). During the examination, Dr. Chiappone noted that Plaintiff followed directions and appeared to put forth a good effort. (Tr. 174). Dr. Chiappone opined that her intellect and fund of knowledge was in the borderline range and that she could understand simple one and two-step job instructions. (*Id*.) Further, he opined that Plaintiff was mildly to possibly moderately impaired in her ability to remember and carry through such tasks. (*Id*.) Further, Plaintiff was mildly impaired in her ability to maintain concentration and

attention, and that over time, her depression would interfere with her ability to carry out these tasks. (Tr. 174-175). Dr. Chiappone assigned Plaintiff a GAF score of 61,[2] indicating some mild limitations in functioning and diagnosed Plaintiff with a depressive disorder. (Tr. 175).

On December 19, 2003, Dr. Robert Gaffey, a state agency psychiatrist, reviewed Plaintiff's records (Tr. 178-193) and opined that Plaintiff had the ability to understand simple job instructions and was only moderately impaired in remembering and carrying out these tasks. (Tr. 180). Further, Plaintiff was mildly to moderately impaired in her ability to maintain concentration and attention for simple, repetitive tasks, and would be more limited in dealing with complex tasks. (*Id.*) Also, Dr. Gaffey opined that Plaintiff was mildly to moderately impaired in her ability to relate to others, evidenced by her physical altercation at her old job.[3] (*Id.*)

Dr. Stephen Fritsch performed a consultative psychological examination on October 11, 2004. (Tr. 201-204). Plaintiff denied having significant symptoms of anxiety. (Tr. 202). Dr. Fritsch noted that Plaintiff had adequate adaptive judgment and

---

[2]    The Global Assessment of Functioning ("GAF") is a numeric scale used by mental health clinicians and physicians to subjectively rate the social, occupational and psychological functioning of adults. The GAF scale ranges from 0 (severe difficulties) to 100 (superior functioning).

[3]    The record indicates that Plaintiff's work history ended when Plaintiff "walked up and choked somebody." (Tr. 302). Plaintiff's mother reported that Plaintiff lost control of her temper and "[t]ook things wrong" and that "you [had] to be careful what you do and say to her." (Tr. 99).

daily functioning.  (Tr. 203).  Plaintiff's full scale IQ was 59,[4] indicating that Plaintiff had

a borderline range of intellectual ability.  (*Id*.)  Dr. Fritsch noted that although Plaintiff

was only basically literate, she managed job duties in a department store and in food

service.  (*Id*.)  Dr. Fristch opined that Plaintiff was able to follow very simple directions

and perform concrete and unskilled tasks as well as entry-level job duties.  (Tr. 203-204).

Further, although Plaintiff was involved in a work-place interpersonal problem, Plaintiff

was cooperative and responsive throughout the interview and testing.  (Tr. 204).  Because

there was only one instance of an interpersonal problem, Dr. Fristch opined that Plaintiff

would be able to have appropriate work-related relationships.  (*Id*.)  Plaintiff showed no

significant symptoms of depression, anxiety, or psychological dysfunction, and

Dr. Fristch opined that Plaintiff would be capable of adaptively responding to typical

stressors and demands in the workplace.  (*Id*.)  Dr. Fristch assigned Plaintiff a GAF score

of 60, indicating some mild limitations in functioning.  (*Id*.)

On January 10, 2005, Dr. David DeMuth, a state agency psychiatrist, reviewed

Plaintiff's records (Tr. 216-237) and opined that, despite her limitations and borderline

intellectual functioning, Plaintiff had the ability to perform simple, routine work, and

could sustain concentration and persistence for these tasks.  (Tr. 218).  Further, despite

her one instance of aggression, Plaintiff had successfully maintained work for an

extended period and, therefore, had the capability to interact appropriately.  (*Id*.)

---

[4]  Average intelligence is an IQ score of approximately 100 and profoundly gifted is an
IQ score over 175.

Dr. Caroline Lewin, another state agency psychiatrist, reviewed Plaintiff's medical records and agreed with Dr. DeMuth's assessment. (Tr. 222, 224).

Plaintiff was admitted to Middletown Regional Hospital on April 22, 2005 for major depression. (Tr. 309-319). Plaintiff reported that she had planned to overdose on all of her medications to "get out of this pain." (*Id.*) She was diagnosed with major depression, personality disorder, and chronic low back pain. (Tr. 309). Plaintiff was discharged on April 26, 2005 and referred for further treatment. (*Id.*)

At Plaintiff's counsel's request, Plaintiff saw Dr. Paul Deardorff for a psychological evaluation on March 1, 2006. (Tr. 298-304). Plaintiff was alert and responsive, but her attention and concentration were weak. (Tr. 300). Plaintiff's full scale IQ was 46, indicating that Plaintiff had a moderately retarded range of intelligence. (*Id.*) However, Dr. Deardorff found that Plaintiff's personality test results were invalid because she exaggerated her difficulties. (Tr. 302). Dr. Deardorff opined that Plaintiff was seriously impaired in her ability to relate to others, withstand stress and pressure, and maintain attention, concentration, persistence, and pace. (Tr. 303-304). Also, Plaintiff was moderately impaired in her ability to understand, remember, and follow simple instructions. (Tr. 303). Dr. Deardorff assigned Plaintiff a GAF score of 41, indicating serious limitations in functioning. (*Id.*)

On April 15, 2007, Dr. Deardorff performed another psychological consultative evaluation. (Tr. 353-357). He found that Plaintiff was clearly exaggerating her difficulties. (Tr. 357). However, he affirmed his March 2006 opinion, that Plaintiff was

seriously to moderately impaired and that her depression would likely effect her work. (*Id*.) Specifically, "the stress of competitive employment is likely to exacerbate her pain and result in more than three days absenteeism per month." (*Id*.)

In his decision, the ALJ found that Plaintiff has "severe" impairments consisting of thoracic disc disease, congenital right hand deformity, borderline intellectual deficits with associated poor academic skills, and depression, but that she did not have an impairment or combination of impairments that met or medically equaled a listing. (Tr. 38-39). Additionally, the ALJ found that Plaintiff's medically-determinable impairments could reasonable be expected to produce the alleged symptoms but that her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible. (Tr. 45).

Vocational expert ("VE") Vanessa Harris testified that Plaintiff could perform work in the specific occupations of inspector, checker, and marker II at the light level of work and could perform work as a table worker, toy stuffer, and surveillance systems monitor. (Tr. 427).

Upon cross-examination, based upon Plaintiff's testimony that she requires naps during the day, cannot be around people, does not want to leave the house, cries all the time and has trouble with her memory, the VE testified that employment would be precluded. (Tr. 429). Furthermore, sedentary work requires the use of both hands, so if Plaintiff could only use her left hand 25% of the day, as she testified, the VE found that she would be precluded from fulltime sedentary work. (Tr. 431).

The ALJ gave Plaintiff an RFC which limited her to a reduced range of light work, which precludes her from performing any past relevant work at medium levels of exertion. (Tr. 41). Plaintiff claimed that she was physically unable to perform any work because of her back condition and hand deformity. However, the ALJ found that the record as a whole did not show that Plaintiff's back nor hand impairment would restrict her from performing all work. The medical opinions (that Plaintiff could perform at least light work) were consistent with the objective medical evidence which showed only mild objective abnormalities. (Tr. 284). Additionally, the record as a whole shows that Plaintiff could perform restricted light work, using her right hand for gross assistance only. (Tr. 102, 309, 415). Accordingly, the ALJ's RFC finding was consistent with the record evidence.

The ALJ also restricted Plaintiff to only occasional bending, squatting, stooping, kneeling, crouching, and crawling and prohibited her from climbing ladders, ropes, or scaffolds or otherwise working around hazards. (*Id.*) Additionally, the ALJ restricted Plaintiff to using her non-dominant right hand for gross assistance only. (*Id.*) Finally, due to her borderline intellectual deficits and depression/anxiety, the ALJ restricted Plaintiff to performing low stress jobs which do not involve production quotas, reading skills above a second grade level, complex or detailed instructions, more than limited contact with co-workers and supervisors, or any direct dealing with the general public. (*Id*). Based on the VE's testimony that there are 4,500 unskilled jobs at the light level and 3,200 unskilled jobs at the sedentary level that Plaintiff could perform, the ALJ found

that Plaintiff was not disabled and denied her claim.  (Tr. 46).

The ALJ found that Plaintiff's allegations of total disability were disproportionate and less-than-credible because the record evidence undermined her allegations.  For example, Plaintiff reported that she functioned independently and cared for all of her own personal needs and could perform basic household chores.  (Tr. 87-88, 129-130).  20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i).  She followed simple recipes, paid her own bills, and managed her checkbook.  (Tr. 129-130).  20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i).  Additionally, Plaintiff had a valid driver's license and was able to drive.  (Tr. 388).  20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i).  Plaintiff's self-reports contradicted her allegations of total disability, and these contradictions were appropriately reflected in the ALJ's RFC finding.

Additionally, Plaintiff alleges that the ALJ erred because he promised a second hearing with a medical expert,[5] but that this second hearing never occurred.  After the initial hearing, Plaintiff did, in fact, see Dr. Vitols for an orthapedic medical examination; however, Plaintiff argues that she was never given the opportunity to address Dr. Vitols' limitations, and, therefore, the ALJ erred.

_____

[5]  "Giving [sic] your testimony today and the lack of medical attention you've had and given the fact that this consultative examination was done maybe like two and a half years ago and your condition has worsened since then I'm going to order an orthopedic medical examination of you . . . And you'll be required to go to a doctor, cooperate with the doctor, perform all the tests fully as much as you can because in some of these I've seen so far it doesn't appear you've done as well as you could do.  And then the doctor will in turn submit to me, as well as your attorney, a written report reflecting his or her findings and I anticipate we'll come back to hearing, have another hearing at that point and we may have a medical doctor here also to testify."  (Tr. 442) (emphasis added).

First, the ALJ did not "promise" to have an additional hearing, rather the ALJ "anticipate[d]" that they would have another hearing and that a medical expert "may" be present to testify. (Tr. 442). Second, the ALJ followed agency procedures by proffering Dr. Vitol's report to Plaintiff's attorney; however, Plaintiff's attorney did not file any objections to the report. (Tr. 33). *See* HALLEX I-2-7-30 at http://www.ssa.gov/OP_Home/hallex/I-02/I-2-7-30.html.[6] Accordingly, the ALJ had no indication that Plaintiff had objections or required a supplemental hearing to question Dr. Vitol.

Finally, Plaintiff asserts that the ALJ committed error because he did not present some of Dr. Vitols' findings to a vocational expert, and that the ALJ needed a medical expert to interpret Dr. Vitols' report. (Doc. 9 at 9-11). Plaintiff's argument lacks merit. To the extent Plaintiff thinks that the ALJ should have instructed the vocational expert to consider medical facts, such as Dr. Vitols' finding that Plaintiff's dorsolumbar spine was limited 50% in extension and right lateral flexion, Plaintiff misapprehends the role of the vocational expert. Vocational experts consider RFC determinations made by ALJs, and they do not independently assess medical facts, such as the medical significance of limitations in range of motion. 20 C.F.R. §§ 404.1566(e), 416.966(e); *see Baker v. Sec'y of Health & Human Servs.*, No. 95-1510, 1996 WL 28965, at *2 (6th Cir. Jan. 24, 1996)

---

[6] Plaintiff had a time limit to object to, comment on, or refute the evidence, including requesting a supplemental hearing and the opportunity to cross-examine the author(s) of any post hearing report(s), if it were determined by the ALJ that such questioning was needed to inquire fully into the issues. *Id.*

(vocational expert's are not consulted to evaluate RFC) (*citing Cook v. Heckler*, 739 F.2d 396, 399 (8th Cir. 1984)).

To the extent Plaintiff thinks the ALJ needed a medical expert to interpret Dr. Vitols' report, that assertion is also incorrect. Dr. Vitols' report was not confusing, and in fact, Dr. Vitols explained the significance of his medical evaluation by providing a detailed assessment of what he thought Plaintiff could do despite her impairments. (Tr. 368-373). Moreover, the fact that the ALJ's RFC finding was more restrictive than the opinion offered by Dr. Vitols shows that the ALJ's RFC finding generously accommodated Plaintiff's credible limitations.[7]

**B.**

For her second assignment of error, Plaintiff maintains that the ALJ erred in finding that she was not credible.

Social Security Ruling 96-7p(2) provides in relevant part:

> "When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effect of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities. This requires the adjudicator to make a finding about the credibility of the individual's ability to do basic work activities. This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects."

---

[7] If Plaintiff wanted a ME or VE to consider Dr. Vitols' report, Plaintiff was required to request a supplemental hearing pusuant to the Social Security proffer procedures. *See* I-2-7-30.

SSR 96-7p(4) states in relevant part that: "[a]n individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence."

Moreover, it is within the discretion of the ALJ, who actually meets with and takes testimony from an individual plaintiff, to evaluate that plaintiff's credibility. As the Sixth Circuit has found: "[i]t is for the [Commissioner], not a reviewing court, to make credibility findings." *Felisky*, 35 F.3d at 1036; *see also McGuire v. Comm'r of Soc. Sec.*, No. 98-1502, 1999 WL 196508, at *6 (6th Cir. Mar. 25, 1999) (*per curiam*) ("An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility.").

The record as a whole shows that Plaintiff could perform restricted light work, using her right hand for gross assistance only. Plaintiff's right hand had been deformed all her life. (Tr. 394). Still, Plaintiff successfully worked at a physically demanding jobs for over 11 years.[8] (Tr. 102, 309). Indeed, Plaintiff even testified that, despite her hand impairment, she could and was lifting up to 20 pounds. (Tr. 415). *See Eichstadt v. Astrue*, 534 F.3d 663 (7th Cir. 2008) ("The ALJ correctly concluded that these conditions

---

[8]   Plaintiff reported that for 11 years she worked full-time as a stock clerk at a major department store. (Tr. 102). She reported that she was physically active during the eight-hour workday and that she used her hand for about five hours each day. (Tr. 111).

were irrelevant to Eichstadt's claim for disability benefits . . . because Eichstadt was able to engage in substantial gainful employment during and after experiencing these problems.")

As noted above, the issue is not whether the record could support a finding of disability, but rather whether the ALJ's decision is supported by substantial evidence. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). The ALJ properly evaluated Plaintiff's allegations in accordance with controlling law, and he reasonably concluded that they were not fully credible. The ALJ's credibility finding is entitled to deference and thus should be affirmed. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) ("Upon review, we are to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying.").

Accordingly, the ALJ's credibility finding is entitled to deference and should be affirmed.

## C.

For her third assignment of error, Plaintiff claims that the ALJ erred in not addressing her IQ in his determination of her ability to perform sedentary work. Specifically, Plaintiff claims that the ALJ erred by not including her illiteracy in the RFC to determine whether she could sustain employment.

In his decision, the ALJ found that "due to [Plaintiff's] borderline intellectual deficits and depression/anxiety, the claimant is further restricted to performing low stress jobs which do not involve production quotas, reading skills above a second grade level,

complex or detailed instructions, more than limited contact with co-workers and supervisors or any direct dealing with the general public." (Tr. 41) (emphasis added). Additionally, the ALJ considered that despite her low intelligence, Plaintiff successfully completed high school and worked for 11 years. (Tr. 105, 102, 203, 309, 338). Furthermore, Plaintiff completed a disability report in which she described herself as literate and in fact reported that she had a driver's license and therefore read well enough to take and pass a written driver's license test. (Tr. 88).

Therefore, the record indicates that the ALJ reasonably weighed the evidence and did, in fact, properly incorporate Plaintiff's low intelligence and reading skills into the RFC finding.

## D.

For her fourth assignment of error, Plaintiff maintains that the ALJ erred when he failed to convey limitations to the vocational expert ("VE") that were properly identified in the RFC assessment and that the VE was unable to give opinions as to how Plaintiff's psychological issues would affect the job base and her ability to work a 40 hour a week job on a sustained basis.

Specifically, Plaintiff claims that while the VE's testimony may be consistent with the information in the Dictionary of Occupational Titles, it is not consistent with the limitations set forth in the ALJ's own RFC, because a review of the occupations identified by the VE evidences that the occupations of table worker (739.687-182, 521.687-102), toy stuffer (731.685-014), marker II (920.687-126), and checker (221.587-

018) require a medium amount of manual dexterity and at least occasional reaching and handling in a repetitive work setting. Plaintiff alleges that these occupations do not fit the abilities of someone who is limited like Plaintiff to using her non-dominant right hand for gross assistance only.

Plaintiff cites to Social Security Ruling 96-6p to suggest that she does not have the manual dexterity necessary to perform the jobs listed by the VE. However, SSR 96-6p only applies to sedentary work, and does not stand for the proposition that individuals with hand limitations are unable to perform work. Instead, it instructs ALJ's to seek VE testimony to assess the vocational impact of an individual's hand limitations. Here, the VE identified 7,700 jobs that Plaintiff could perform given her manual dexterity. (Tr. 427).

Plaintiff also claims that the VE's testimony conflicts with the DOT. Specifically, Plaintiff claims that the jobs identified by the VE are inconsistent with the limitations that the ALJ posed in his hypothetical questions and therefore the VE testimony cannot be relied upon because the ALJ failed to convey the limitations that were identified in the RFC assessment. In addition, Plaintiff argues that the VE was unable (or chose not) to give opinions on how Plaintiff's psychological issues would affect the job base and her ability to work a 40 hour week job on a sustained basis.

VE's are not retained to testify about a plaintiff's specific medical condition. 20 CFR §§ 404.1566(e), 416.966(e). A VE's role is to advise the judge as to the availability of jobs in the national economy for an individual who has a specific set of functional

limitations.  *Id.*; *see Baker v. Sec'y of Health & Human Servs.*, No. 95-1510, 1996 WL

28965, at *2 (6th Cir. Jan. 24, 1996) (vocational expert's are not consulted to evaluate

RFC) (citing *Cook v. Heckler*, 739 F.2d 396, 399 (8th Cir. 1984)).  It is the ALJ's

responsibility to determine plaintiff's impairments and limitations, not the VE.  The

ALJ's hypothetical adopted only the reasonable limitations that the ALJ found justified

by the record.  *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir.

1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational

expert and is required to incorporate only those limitations accepted as credible by the

finder of fact.").

　　The VE testified that there were not conflicts between her testimony and the

DOT.[9]  (Tr. 428).  Moreover, the regulations do not require that a VE's testimony be

supported by the DOT or "government data."  *See* 20 C.F.R. § 416.966(d)(1) (the Social

Security Administration has taken "administrative notice" of the DOT); *Carey v. Apfel*,

230 F.3d 131, 145 (5th Cir. 2000) ("the DOT is not comprehensive, in that it cannot and

does not purport to include each and every specific skill or qualification for a particular

job").  Here, the VE's testimony was supported by her own personal observation of the

jobs she identified and common sense.  No more was required.  *Conn v. Sec'y of Health

& Human Servs.*, 51 F.3d 607, 610 (6th Cir. 1995) ("the social security regulations do not

require the Secretary or the expert to rely on classifications in the Dictionary of

---

[9]　　The DOT lists maximum requirements of occupations as generally performed, not the
range of requirements of a particular job as it is performed in specific settings.  A VE is able to
provide more specific information about jobs or occupations than the DOT.

Occupational Titles").  The VE identified jobs based on her personal observation, and

Plaintiff presents no evidence that suggests these jobs require more than occasional neck

rotation.

Relying on SSR 00-4p, Plaintiff further argues that "SSA adjudicators may not

rely on evidence provided by a VE, VS, or other reliable source of occupational

information if that evidence is based on underlying assumptions or definitions that are

*inconsistent with* our regulatory policies or definitions."  (Doc. 8 at 7) (emphasis added).

However, the VE's  testimony was not inconsistent with the DOT because the DOT does

not categorize or rate jobs according to how much neck rotation they require.

Accordingly, the ALJ's decision is supported by substantial evidence and it should be

affirmed.  *See* 42 U.S.C.

§§ 405(g), 1383(c)(3).

## E.

For her fifth assignment of error, Plaintiff claims that the ALJ erred in failing to

make proper credibility findings as to Plaintiff's mother's testimony.

At the hearing, Plaintiff's mother testified that she had daily contact with her

daughter and that: (1) Plaintiff is "very depressed and in a lot of pain"; (2) "She cried all

the time and does not associate with people"; (3) she is not faking her symptoms; (4) she

has to assist Plaintiff with laundry, household chores, and takes her where she needs to

go; (5) she reads for Plaintiff because Plaintiff cannot read; and (6) she reminds Plaintiff

to take her medications about 4-5 times a week.  (Tr. 420-25).

In his decision, the ALJ acknowledged Plaintiff's mother's statements about

Plaintiff's condition. (Tr. 37). However, the mother's conclusory statements are judgments reserved to the Commissioner and are not entitled to any weight. 20 C.F.R. §§ 404.1527(e), 416.927(e). Further, Plaintiff's mother's testimony does not contradict Plaintiff's testimony, and, therefore, the ALJ was not required to discuss it in detail. *Allison v. Comm'r of Soc. Sec.*, No. 96-3261, 1997 WL 103369, at *3 (6th Cir. Mar. 6, 1997) (it is irrelevant that the ALJ did not discuss the [lay witness] testimony because "[n]othing in the ALJ's decision conflicts with" the other evidence.). *See also Carlson v. Shalala*, 999 F.2d 180 (7th Cir. 1993) (ALJ's failure to address lay testimony was harmless).

Accordingly, the ALJ properly considered the lay testimony and his findings should therefore be affirmed.

## F.

For her final assignment of error, Plaintiff maintains that the ALJ erred in discounting psychologist Dr. Paul Deardorff's opinion. Additionally, Plaintiff claims that the ALJ erred in failing to have a psychologist or mental health expert present at the hearing to evaluate the case as a whole.

The ALJ clearly explains that he discounted Dr. Deardorff's opinion because he based his assessment of Plaintiff's work capacity on Plaintiff's subjective complaints. (Tr. 43). The Sixth Circuit has held that it is proper to reject a medical opinion which is based in part upon the subjective complaints of the claimant. *See, e.g., Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990) (report from Pain Center

properly rejected where findings based on claimant's subjective complaints); *Thomas v. Comm'r of Soc. Sec.*, 105 Fed. Appx. 715 (6th Cir. 2004) (unpublished) (examining physician's opinion properly rejected where opinion was based in part on claimant' subjective complaints, many of which were not supported by objective medical findings); *Musaad v. Comm'r of Soc. Sec.*, No. 94-1546, 1995 U.S. App. LEXIS 27249 (6th Cir. Aug. 29, 1995) (ALJ properly rejected treating physicians' opinions which were based on claimant's subjective complaints and not supported by objective clinical findings). Therefore, it was proper for the ALJ to discount Dr. Deardorff's opinion because the other reviewing psychologists' findings were supported by objective evidence.  (Tr. 41-44).

Additionally, an ALJ's decision regarding whether a medical expert ("ME") is necessary is inherently discretionary.  An ALJ abuses his discretion when the testimony of a ME is "required for the discharge of the ALJ's duty to conduct a full inquiry into the claimant's allegations."  *See* 20 C.F.R. § 416.1444."  *Haywood v. Sullivan*, 888 F.2d 1463, 1467-68 (5th Cir. 1989).  Here, the ALJ did not abuse his discretion because his decision included a fair recitation of the evidence and included well-documented findings supporting the conclusion that Plaintiff was not disabled.  (Tr. 37-47).  Accordingly, the ALJ's decision is supported by substantial evidence and should be affirmed.

### III.

For the foregoing reasons, Plaintiff's assignments of error are unavailing.  The ALJ's decision is supported by substantial evidence and should be affirmed.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner, that Plaintiff was not entitled to a period of disability and disability income benefits, be found **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**; and, as no further matters remain pending for the Court's review, this case be **CLOSED.**


Date:   November 27, 2009             s/ Timothy S. Black
                                      Timothy S. Black
                                      United States Magistrate Judge

UNITED  STATES  DISTRICT  COURT
SOUTHERN  DISTRICT  OF  OHIO
WESTERN  DIVISION

DONNA PELFREY,                          :          Case No. 1:08-cv-605
                                        :
          Plaintiff,                    :          Judge Michael R. Barrett
                                        :          Magistrate Judge Timothy S. Black
vs.                                     :
                                        :
COMMISSIONER OF                         :
SOCIAL SECURITY,                        :
                                        :
          Defendant.                    :

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written

objections to the proposed findings and recommendations within **10 DAYS** after being

served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this

period is automatically extended to **13 DAYS** (excluding intervening Saturdays, Sundays,

and legal holidays) when this Report is being served by mail and may be extended further

by the Court on timely motion for an extension.  Such objections shall specify the

portions of the Report objected to and shall be accompanied by a memorandum of law in

support of the objections.  A party may respond to another party's objections within **10**

**DAYS** after being served with a copy thereof.  Failure to make objections in accordance

with this procedure may forfeit rights on appeal.  *See United States v. Walters,* 638 F. 2d

947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 106 (1985).